

**NUMBER 13-14-00729-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

### IN THE INTEREST OF C.J.N.-S. AND J.C.N.-S.

**On appeal from the 131st District Court of
Bexar County, Texas.**

## MEMORANDUM OPINION ON REMAND

**Before Justices Rodriguez, Contreras, and Longoria
Memorandum Opinion on Remand by Justice Longoria**

Appellant Kenneth R. Spear challenges: (1) the sufficiency of the evidence supporting a judgment ordering him to pay monthly child and medical support to appellee Karen L. Narciso for their adult child, C.J.N.-S.; and (2) the amount of support he was ordered to pay.[1]  *See* TEX. FAM. CODE ANN. § 154.302(a) (West, Westlaw through 2017 1st C.S.).  We affirm. [2]

---

[1] We refer to C.J.N.-S. by her initials to protect her identity.  *See* TEX. R. APP. P. 9.8(b).

[2] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

## I. BACKGROUND

### A. Factual Background

Narciso and Spear were divorced on July 13, 1998. They have two children together, but only the interests of C.J.N.-S., their adult daughter, are relevant to this appeal. C.J.N.-S. was born on April 8, 1993 and turned eighteen years of age on April 8, 2011. Narciso testified that C.J.N.-S. has continuing medical problems which began several years before she turned eighteen.

C.J.N.-S. has lived apart from her parents since 2013, when she was approximately twenty years of age. Around that time, C.J.N.-S. was able to hold a job caring for children but lost the job after she was diagnosed with gastroparesis in May of 2013. Narciso described the disease as a disorder that interrupts the movement of food through the stomach and causes severe nausea, vomiting, and abdominal cramping. C.J.N.-S. takes medication daily and uses a feeding tube to help control the symptoms. Narciso testified that she transported C.J.N.-S. to, and paid for, at least twenty-three medical appointments, which included routine doctor visits, emergency room trips, and surgeries.

Approximately a year passed between the time of her diagnosis and the trial. At trial, Narciso testified that C.J.N.-S. continues to live alone in an apartment; however, Narciso also testified that she visits C.J.N.-S. several times a week to help her with household chores, such as doing her laundry, taking care of her pets, and helping her drive places since C.J.N.-S. does not drive. On average, Narciso claims to spend four to five hours every weekday with C.J.N.-S., in addition to spending several hours with her on the phone to help her deal with her mental issues. C.J.N.-S. has been diagnosed as bipolar as well as having generalized anxiety disorder.

## B. Procedural Background

On March 7, 2014, Narciso brought this action seeking an order directing Spear to pay child support and medical support for C.J.N.-S. to Narciso. C.J.N.-S. was almost twenty-one years of age at the time Narciso filed suit, and neither parent claimed to have physical custody or guardianship over C.J.N.-S. Spear argued to the trial court that Narciso did not have standing to bring suit under section 154.303 of the Texas Family Code for that reason. In response, the trial court stated that the language of the statute was unclear and adopted Narciso's interpretation that neither physical custody nor guardianship was required for a parent to have standing. The trial court further held that C.J.N.-S. was an adult disabled child and ordered Spear to pay $722.85 per month as child support and $250.00 per month as medical support to Narciso for C.J.N.-S. Spear appealed to our court.

We dismissed the appeal for want of jurisdiction, sustaining Spear's first issue that Narciso did not have standing to bring the suit. *In re C.J.N.-S.*, 501 S.W.3d 646, 648 (Tex. App.—Corpus Christi 2016), *rev'd*, __S.W.3d__, No. 16-0909, 2018 WL 1022598, at *1 (Tex. Feb. 23, 2018) (per curiam). Having concluded that Narciso did not have standing, we did not reach Spear's other issues concerning the sufficiency of the evidence supporting: (1) the trial court's finding that C.J.N.-S. requires support due to a disability that existed prior to her eighteenth birthday; and (2) the amount of support awarded. The Supreme Court of Texas disagreed and instead held that Narciso has standing. The supreme court explained,

> Narciso's position is that the Legislature intended the phrase "a parent of the child" to be separate from the phrase "another person having physical custody or guardianship of the child under a court order." Under that reading, a parent would have standing to bring suit regardless of whether the parent has physical custody or court-ordered guardianship, while

3

persons other than parents would have standing only if they have physical custody of the child or are court-ordered guardians. . . . She posits that the Legislature intended neither to place additional burdens and expense upon parents of adult disabled children nor to deprive disabled individuals of independence by requiring them to remain in the custody of their parents.

. . .

Narciso reads the statute correctly. If section 154.303(a)(1) affords parents standing only if they have physical custody or court-ordered guardianship of their adult child, then the words "parent of the child" in the statute are rendered meaningless. Under that construction all individuals, regardless of parentage, would have to meet the same requirements. We presume the Legislature intended for no words within the statute to be read as a nullity. Further, under the last-antecedent doctrine which courts use to aid in interpreting statutes, a qualifying phrase should be applied only to the words or phrase immediately preceding it to which it may be applied without impairing the meaning of the sentence.

*See In re C.J.N.-S.*, __S.W.3d__, 2018 WL 1022598, at *4–5. Accordingly, the supreme court remanded the case to us to consider Spear's remaining two issues.

## II. LEGAL AND FACTUAL SUFFICIENCY

In his second issue, Spear contends that there was factually and legally insufficient evidence to support the finding that C.J.N.-S. requires substantial care and personal supervision because of a mental or physical disability that existed prior to her eighteenth birthday. In his third issue, Spear challenges the legal and factual sufficiency of the evidence to support the amount of the child support awarded.

## A. Standard of Review

A judgment regarding child support is reviewed under an abuse of discretion standard. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see In re A.M.W.*, 313 S.W.3d 887, 890 (Tex. App.—Dallas 2010, no pet.) (holding that a trial court has broad discretion in setting or modifying child support payments). A trial court's decision must be arbitrary, unreasonable, and without reference to guiding principles for the

4

appeals court to determine there was an abuse of discretion. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

In this context, legal and factual sufficiency are factors in determining whether there was an abuse of discretion by the trial court. *See Stucki v. Stucki*, 222 S.W.3d 116, 119 (Tex. App.—Tyler 2006, no pet.). There is a two-prong test to determine whether the trial court abused its discretion because of insufficient evidence: (1) did the trial court have sufficient evidence to exercise its discretion; and (2) did the trial court err in the application of such discretion? *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). When evaluating legal sufficiency of the evidence, the court must view all evidence in the light most favorable to the verdict and consider every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the decision under review." *Id.* at 827. When reviewing factual sufficiency, the court examines all of the evidence in a neutral light. A finding should be set aside when it is clearly wrong and contrary to the weight of the evidence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## B. Sufficiency of the Evidence Supporting the Award of Child Support

In his second issue, Spear argues that the evidence was legally and factually insufficient to support the finding that C.J.N.-S. requires substantial care and personal supervision and is incapable of self-support.

To award support for an adult, disabled child, the trial court must find that

(1) the child, whether institutionalized or not, requires substantial care and personal supervision because of a mental or physical disability and will not be capable of self-support; and

5

> (2) the disability exists, or the cause of the disability is known to exist, on or before the 18th birthday of the child.

TEX. FAM. CODE ANN. § 154.302(a).

Spear does not deny the existence of C.J.N.-S.'s disability before her eighteenth birthday. Narciso testified that even though the official diagnosis came after her eighteenth birthday, C.J.N.-S. had been showing the symptoms for years before her eighteenth birthday and had actually been misdiagnosed with several other diseases. Spear focuses on whether C.J.N.-S. required personal supervision and substantial care and whether she was capable of self-support.

Spear claims that there was no evidence that C.J.N.-S. requires substantial care and supervision due to her disabilities. Spear also refers to Narciso's acknowledgement that she does not spend much time with Narciso on the weekends. Furthermore, Spear claims that there is no "specific evidence regarding the type of care [Narciso] provides or that C.J.N.-S. would be unable to provide the same level of care herself." In short, Spear claims that Narciso did not meet the "substantial care" element because C.J.N.-S. does not require care "twenty-four hours out of every twenty-four hours."

However, we find that the record supports the trial court's findings regarding supervision and care. Although C.J.N.-S. was living away from Narciso for eight months and held a job during that time, this was before she was officially diagnosed with gastroparesis, not to mention that C.J.N.-S. was living with her boyfriend, who assisted her. But her boyfriend moved out, and C.J.N.-S. now lives alone. Also, despite Spear's contention to the contrary, the record contains Narciso's testimony regarding the care she provides for C.J.N.-S.: Narciso helps her with laundry, shopping, taking care of her pets, and other household chores that are difficult for C.J.N.-S. to do alone. In addition, Narciso

6

testified that she drives C.J.N.-S. to places she needs to go since C.J.N.-S. cannot drive herself. Spear cites no statute or case law to support his claim that Narciso needs to provide C.J.N.-S. with "twenty-four hour" care to receive child support. Rather, the statute simply requires a finding that the child needs "substantial care" and "personal supervision." TEX. FAM. CODE ANN. § 154.302(a).

He also cites the fact that C.J.N.-S. held a job for an eight-month period, while living with her boyfriend, as evidence that she is capable of self-support. But Narciso also testified that it is extremely difficult for C.J.N.-S. to maintain employment with her diagnosis; C.J.N.-S. was fired from her job once her employer learned of her diagnosis.

In summary, while C.J.N.-S. did hold a job for eight months, she was not living alone at that time and she was fired once her employer learned of her disability, which further supports the finding that C.J.N.-S. is incapable of self-support. The record further demonstrated that Narciso spends sixteen to twenty hours a week helping her perform household chores that would be difficult for her to do alone. Spear cites no authority for the claim that this does not qualify as substantial care. We hold that the trial court did not abuse its discretion in finding that C.J.N.-S. requires substantial care and supervision and that she is not capable of self-support. *See Worford*, 801 S.W.2d at 109. The evidence is legally and factually sufficient to support the trial court's finding that C.J.N.-S. requires substantial care and personal supervision and that she is incapable of self-support because of a disability that existed prior to her eighteenth birthday. *See Stucki*, 222 S.W.3d at 119; *Boyd*, 131 S.W.3d at 611. We overrule Spear's second issue.

## C. Sufficiency of the Evidence Supporting the Amount of Child Support Awarded

In his third issue, Spear argues that there was legally and factually insufficient evidence to support the amount of support awarded to Narciso.

7

The Texas Family Code specifically delineates four factors that a court "shall determine and give special consideration to" when setting the amount of child support for a disabled child after his eighteenth birthday. *See* TEX. FAM. CODE ANN. § 154.306 (West, Westlaw through 2017 1st C.S.). Specifically, the factors are:

(1) any existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability;

(2) whether the parent pays for or will pay for the care or supervision of the adult child or provides or will provide substantial care or personal supervision of the adult child;

(3) the financial resources available to both parents for the support, care, and supervision of the adult child; and

(4) any other financial resources or other resources or programs available for the support, care, and supervision of the adult child.

*Id.*

Spear argues that there is no evidence on any of the four factors. Spear claims that Narciso did not testify regarding the actual expenses of C.J.N.-S. or that she had existing needs. Related to his second issue, Spear again argues that there is no evidence that C.J.N.-S. will likely need substantial care and supervision for the indefinite future. And Spear further argues that the evidence is insufficient because it does not show that Narciso provides for 100% of the care for C.J.N.-S. We disagree.

In our discussion of Spear's second issue, we already covered how the record is in favor of Narciso on the first factor of section 154.306(1). *See* TEX. FAM. CODE ANN. § 154.306. Her disability causes severe vomiting, nausea, and abdominal cramping. The record demonstrated that C.J.N.-S. has difficulty maintaining a job and performing household chores in her condition. Despite the feeding tube, medication, and surgeries, C.J.N.-S. continues to require substantial care and supervision.

8

Regarding the second factor, Narciso testified that there are at least $70,000 of unpaid medical bills in C.J.N.-S.'s name. *See* TEX. FAM. CODE ANN. § 154.306 (2). According to Narciso, she has been the only one to pay C.J.N.-S.'s bills; she testified that despite her requests, Spear has not contributed any money to C.J.N.-S.'s living or medical expenses once she turned eighteen. Spear retorts that he spent $1,400 on C.J.N.-S.'s medical expenses through his health savings account; however, that is a fraction compared to the amount Narciso has paid and the outstanding medical bills. For example, the itemized list of expenses for 2012 to 2014 shows that Narciso paid least $6,680 in medical expenses, plus over $30,000 in living expenses, such as rent and food, for C.J.N.-S. Furthermore, Narciso testified that she has had to dip into her savings and retirement accounts to pay for C.J.N.-S.'s expenses. In addition, Narciso continues to spend sixteen to twenty hours a week providing care for C.J.N.-S. whereas Spear does not contribute to her care.

Regarding the third factor, Spear's monthly gross income was $5,000 at the time of the hearing. *See* TEX. FAM. CODE ANN. § 154.306(3). Spear contends that the amount awarded to Narciso was unsupported by the record because historically she earned more than him; he also takes issue with the fact that Narciso did not testify concerning her current net monthly resources. However, Narciso did not testify concerning current wages because, as the record very clearly indicates, Narciso is not currently employed; Narciso once earned $130,000 a year, but she was fired from her position because of all the time off she took to help C.J.N.-S. and to transport her to medical appointments and surgeries. Narciso claims that she has not been able to find another job yet.

Regarding the fourth factor, Narciso testified that she has performed extensive research to find financial resources that C.J.N.-S. might qualify for. *See* TEX. FAM. CODE

ANN. § 154.306(4). However, she testified that they have not been able to find anything. She applied for various government benefits, including Social Security disability insurance and Supplemental Security Income, but C.J.N.-S. was never approved.

In summary, the uncontroverted evidence establishes that Narciso is the one paying for most, if not all, of C.J.N.-S.'s medical bills and living expenses. The record demonstrates that C.J.N.-S. is incapable of self-support and requires substantial care in her daily living. The record further reflects that Spear is currently employed; meanwhile, Narciso is unemployed because of the amount of time she has dedicated to taking care of C.J.N.-S. We conclude that the trial court considered evidence on all four factors and did not abuse its discretion in the amount of support it awarded to Narciso. *See Worford*, 801 S.W.2d at 109. The evidence is legally and factually sufficient to support the amount of support the trial court awarded. *See Stucki*, 222 S.W.3d at 119; *Boyd*, 131 S.W.3d at 611. We overrule Spear's third issue.

## III. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Delivered and filed the
19th day of April, 2018.

10