NO. 07-08-00346-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 26, 2010

IN THE INTEREST OF B.L.M. AND C.D.M.,
MINOR CHILDREN

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 34,251; HONORABLE LEE W. WATERS, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

G.D.M. (Father) and J.P. (Mother) are the parents of B.L.M. and C.D.M. Through eight issues Father appeals the trial court's order modifying a final decree of divorce. We will affirm.

Background

Father and Mother were divorced in the Lubbock County Court at Law Number 3 by decree signed November 2, 1998. The decree appointed Father and Mother joint managing conservators of B.L.M. and C.D.M. with Mother receiving the right to designate the primary residence of the children. Father was ordered to make child

support payments of $80 per week and provide health insurance. Father and Mother were each ordered to pay fifty percent of any uninsured healthcare expenses.

Mother remarried and moved from Lubbock County to Pampa in Gray County. The record does not establish the date of her move. On December 1, 2005, however, the Office of Attorney General filed a motion to transfer the case to Gray County. On December 12, the Lubbock County Court at Law Number 3 heard a motion to modify the decree brought by Mother. A resulting order was signed on January 13, 2006. Among other things, the modification order required Mother to provide health insurance for the children and Father to pay Mother $80 per month medical support for the children.

On February 15, 2006, the trial court signed a second modification order arising from the December 12 hearing. It added to the January 13 order requirements affecting the amount of Father's child support obligation. Also on February 15, the trial court signed an order directing Father's employer to withhold current support from Father's earnings.

On March 6, 2006, the case was transferred to Gray County. On April 25, Mother, apparently appearing *pro se,* filed a motion entitled "Correction and Justification for Motion to Modify." The pleading bears no signature or indication of service on Father. Through it Mother requested modification or clarification of a prior order or orders.

Also on April 25, the transferee court signed an order bearing the printed heading "Order in Suit to Modify-Parent Child Relationship." To this title, the trial judge added in longhand, "Nunc Pro Tunc." The order granted some of the relief requested in Mother's April 25 motion. It altered Father's support obligation based on what Mother alleged was a mathematical error in the February 15 order. It also ordered Father pay fifty percent of uninsured healthcare expenses incurred for B.L.M. and C.D.M. Contrary to a recital in the April 25 order, the record before us does not contain a modified order of withholding for support.

On April 25, 2006, Mother also filed an unsigned motion requesting the trial court hold Father in contempt. Father was not served with this motion until March 23, 2007. Father answered and in August 2007 filed a motion to modify seeking appointment as sole managing conservator of the children. Also in August 2007, Mother, now represented by counsel, filed an amended motion to enforce child support.

Following a September 6, 2007, hearing the court signed a temporary order on November 27 providing that Father have primary custody of C.D.M. and Mother have primary custody of B.L.M. The order specified "withholding orders directing [Father] to pay child support are modified effective September 21, 2007, to provide that child support be paid in the amount of $410.00 per month. Credit for any overpayments shall be applied to future child support owed." The order perpetuated the mutual obligation of the parties for payment of fifty percent of health care expenses not reimbursed by insurance.

On May 8, 2008, the court held a final hearing of the parties' pending motions. Prior to the hearing, Mother and Father agreed that Father would be appointed managing conservator of C.D.M. and Mother would be appointed managing conservator of B.L.M. After hearing the other matters raised, the trial court issued a letter ruling setting the child support obligations of Father and Mother, ordering Father reimburse Mother one-half of uninsured healthcare expenses incurred for the children, awarding attorney's fees of $1,200 to Mother's attorney, and taxing court costs against Father. The letter ruling was formalized in an order signed June 30. Father timely filed a notice of appeal expressly challenging the June 30 order.

Discussion

In his second issue, Father argues the evidence was insufficient to support the trial court's award to Mother of $850 for uninsured healthcare expenses. In a finding of fact, the court found Mother incurred $1,700 of reasonable and necessary uninsured medical expenses for B.L.M. and C.D.M. and one-half this amount was the obligation of Father under an unspecified "previous order."

We review a trial court's ruling on a motion for enforcement under an abuse of discretion standard. *See In re M.K.R.,* 216 S.W.3d 58, 61 (Tex.App.–Fort Worth 2007, no pet.) (reviewing trial court's ruling on child support arrearages and payment of attorney's fees under abuse of discretion standard); *In re T.J.L.,* 97 S.W.3d 257, 265 (Tex.App.–Houston [14th Dist.] 2002, no pet.) (abuse of discretion standard applied in reviewing order enforcing payment of child's healthcare expenses and uninsured medical expenses). A trial court abuses its discretion if it acts in an arbitrary or

4

unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). Under the abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but if implicated are relevant factors for determining whether the trial court abused its discretion. *Niskar v. Niskar,* 136 S.W.3d 749, 753 (Tex.App.–Dallas, no pet.). *See also Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991).

We review findings of fact for legal and factual sufficiency under the same standards applied on review of a jury's findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).

In determining the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 809 (Tex. 2005).

When considering a factual sufficiency challenge of a finding on which the appellant did not bear the burden of proof, we first examine all of the evidence, *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986), and, having considered and weighed all of the evidence, set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). The trier of fact is the sole judge of the

credibility of the witnesses and the weight given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.).

The 1998 decree orders Father and Mother each "pay 50 percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the parties' child . . . ." At the May 8, 2008 modification hearing, Mother presented evidence that she paid $1,700.37 in uninsured medical expenses for B.L.M. and C.D.M. She testified that Father owed one-half this total. The court admitted without objection an exhibit containing Mother's calculations supporting the total and copies of medical bills for the children. Father did not challenge this evidence by cross-examination or direct evidence.

Father also argues under this issue that the January 13 and February 15, 2006, orders contain no language obligating him to pay one-half of uninsured medical expenses for the children. Concerning these orders, this is correct. But as noted, the 1998 decree fixed the obligation for payment of uninsured medical expenses and the record contains no order modifying this obligation. Moreover, the orders of January 13 and February 15 each provide "[a]ll other terms of the prior orders not specifically modified in this order shall remain in full force and effect." A valid order thus existed obligating Father for payment of one-half any uninsured medical expenses incurred for B.L.M. and C.D.M. We find in ordering reimbursement, the trial court did not abuse its discretion. We overrule Father's second issue.

By his fifth issue, Father contends the trial court failed to properly credit him for overpayment of child support under temporary orders. We review issues regarding

payment of child support under the abuse of discretion standard. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990). The November 27, 2007, temporary order provides in part, "Credit for any overpayments shall be applied to future child support owed [by Father]." In its findings of fact and conclusions of law following the final hearing the trial court stated, "Any alleged overpayment of temporary child support was taken into account when awarding attorney's fees to [Mother's] attorney." Counsel for Mother sought attorney's fees of $2,400. The court awarded $1,200. Under the facts presented, the trial court did not abuse its discretion by applying any credit due Father to the amount Father owed Mother's attorney rather than to future child support payments. We overrule Father's fifth issue.

Through his sixth and seventh issues, Father contends the trial court ordered him to make excessive child support payments because it failed to find Mother was intentionally underemployed.

If the actual income of a parent obligated to make child support payments is significantly less than what the parent could earn because of intentional unemployment or underemployment, the trial court may apply the support guidelines to the earning potential of the parent. Tex. Fam. Code Ann. § 154.066 (Vernon 2008).

The evidence shows Mother held a cosmetology license but was unable to work in this trade because of a back injury. The existence of the injury was not challenged. The evidence further shows at the time of trial Mother held a part-time position for a school district transporting students twenty-seven miles between Pampa and Borger in a school district Suburban. This position produced more income than Mother's

immediate past position with a drugstore. On cross-examination, Mother testified she took the position with the school district to be at home with her children and for insurance benefits. Finally, the record does not show what Mother could earn under another employment scenario, such as practicing cosmetology with or without the limitations of a back injury. Under these facts, the trial court acted within its discretion in finding Mother was not intentionally underemployed. We, accordingly, overrule Father's sixth and seventh issues.

By his third and fourth issues, Father argues the evidence did not support taxing him with costs of court and adjudging him responsible for payment of a portion of Mother's attorney's fees. The basis of the argument is neither party was "completely successful" at the May 8 hearing. Thus, Father contends, "[f]airness and equity dictate that each party should be responsible for their own attorney fees and court costs...."

The trial court has broad discretion to award attorney's fees and costs under the Family Code. *See* Tex. Fam. Code Ann. § § 106.001, 106.002 (Vernon Supp. 2008); *Bruni v. Bruni,* 924 S.W.2d 366, 368 (Tex. 1996). We accordingly apply an abuse of discretion standard on review of such awards. *Bruni,* 924 S.W.2d at 368; *In re M.A.N.M.* 231 S.W.3d 562, 567 (Tex.App.–Dallas 2007, no pet.).

Counsel for Mother testified that his fee in the case was $200 per hour which he believed reasonable. He incurred twelve hours preparing for and trying the issues then before the court. In his opinion, $2,400 was a reasonable fee for these services. The court awarded Mother's attorney a judgment of $1,200 against Father for attorney's fees. It also taxed costs of court against Father.

8

At issue in the May 8 hearing were Father's motion to modify, Mother's motion to enforce, and Mother's motion to sanction Father. In his motion to modify, Father sought sole managing conservatorship of B.L.M. and C.D.M. or alternatively supervised visitation between the children and Mother. He also sought an order of child support, including healthcare coverage of the children, and attorney's fees and costs. Father contended Mother was intentionally underemployed. Mother sought payment of fifty percent of uninsured healthcare expenses and medical insurance premiums for B.L.M. and C.D.M., a contempt citation, confinement of Father for contempt, modification of visitation exchange procedure, increased child support, a money judgment for intentional infliction of emotional distress, and attorney's fees and costs.

Before the hearing, the parties agreed that each would have primary custody of a child. Father's support obligation increased based on his net resources. But because of mother's support obligation, net support due her decreased. Father was ordered to reimburse Mother $850 for uninsured healthcare expenses. Father was not, however, required to reimburse Mother for health insurance premiums. Father was not held in contempt nor sanctioned. And Mother did not present her claim for intentional infliction of emotional distress. Visitation was necessarily altered because of the primary custody agreement of the parties.

The number and diversity of issues presented to the trial court with their concomitant differences in breadth and scope render it impossible to declare one party the "prevailing party" at the May 8 hearing. "[I]n family law cases, it is not always so easy to determine who the prevailing party is." *In re M.A.N.M.,* 231 S.W.3d at 566. But

9

determining the "prevailing party" in the trial court is unnecessary to our decision as attorney's fees may be awarded even against the successful party in a family law case if based on the best interest of the child. *Nordstrom v. Nordstrom,* 965 S.W.2d 575, 583 (Tex.App.–Houston [1st Dist.] 1997, pet. denied). *See In re A.M.,* 974 S.W.2d 857, 866 (Tex.App.–San Antonio 1998, no pet.) (best interest of children is paramount in family law cases so that award of attorney's fees and costs to prevailing party not always appropriate). Here, in its findings of fact and conclusions of law issued after its June 30, 2008, final order, the court found Mother's attorney's fees were incurred "in relation to the children."

After review of the entire record, we are unable to say that the trial court abused its discretion by taxing attorney's fees and costs against Father. We overrule Father's third and fourth issues.

In his first issue, Father complains that the April 25, 2006, order is not a proper judgment nunc pro tunc but the product of a judicial determination improperly modifying a prior final order. He variously characterizes the April 2006 order as "void" and "voidable," and appears to contend it forms the foundation for the June 30, 2008 order that is the subject of this appeal.

Although the April 2006 order addresses Father's support obligation, by motions to modify filed during August 2007, Father and Mother continued litigating disputed issues including custody and support. A September 2007 hearing produced an extensive temporary order affecting conservatorship, possession and access to the

children, support, and payment of uninsured health care expenses of the children. This order remained in place until the June 30, 2008, final order now on appeal.

Assuming for the sake of argument the April 2006 order was improperly rendered, nothing before us demonstrates the error probably caused the rendition of an improper judgment on June 30. *See* Tex. R. App. P. 44.1(a)(1). Father has not shown that error in the signing of the April 2006 order constitutes reversible error with regard to the present appeal. Appellant's first issue is overruled.

Finally, although not designated an issue on appeal, Father requests remand of the case to "a different court." The record contains no indication that Father challenged venue or sought a transfer in the trial court.[1] Absent presentation of the venue issue to the trial court and preservation of an adverse ruling, nothing is preserved for appellate review. *See* Tex. R. App. P. 33.1(a). This issue is overruled.

Conclusion

Having overruled each of Father's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

---

[1] The Family Code provides the exclusive mechanism for challenging and transferring venue of suits affecting the parent-child relationship. *In re Leder,* 263 S.W.3d 283, 286 (Tex.App.–Houston [1st Dist.] 2007, orig. proceeding).